THOMAS A. DOLAN *vs.* COUNTY OF SUFFOLK.

Suffolk.    April 1, 1941. — November 25, 1941.

Present: FIELD, C.J., DONAHUE, QUA, DOLAN, & COX, JJ.

*County. Jurisdiction,* Exhaustion of nonjudicial remedies. *Contract,* Of employment. *Constitutional Law,* Separation of powers of government. *Words,* "Failure to act."

A clerk in the probation office of a District Court, if he had a valid appointment and a valid contract with the county for service, would not have been required to resort to the appeal provided by § 52 of G. L. (Ter. Ed.) c. 35, as amended by St. 1938, c. 73, § 1, before enforcing by an action at common law his right to recover his salary for services rendered.

A judge of a District Court has no power to appoint a clerk in the probation department of his court as a part time worker at a certain yearly salary with an ultimate step-rate increase where there has been no previous allocation and fixing of salary under G. L. (Ter. Ed.) c. 35, §§ 49–56, as amended.

The wide power of the General Court over the expenditure of public funds is not curtailed by the fact that its exercise may interfere with the management and operation of a court not established by the Constitution.

CONTRACT. Writ in the Municipal Court of the City of Boston dated November 10, 1939.

On removal to the Superior Court, a demurrer to the declaration was overruled by *Greenhalge,* J., and, at a hearing on the merits, there was a finding by *Buttrick,* J., for the plaintiff in the sum of $820.13.

The case was submitted on briefs.

*K. Hern,* Assistant Corporation Counsel, for the defendant.

*E. A. McLaughlin,* for the plaintiff.

DOLAN, J.   This is an action of contract to recover salary alleged to be due from the defendant to the plaintiff for services rendered as clerk in the probation office of the Municipal Court for the South Boston district of the city of Boston.   The plaintiff contends that he was appointed

to the position by the presiding judge of that court on or about January 1, 1939, under G. L. (Ter. Ed.) c. 276, § 88. The defendant filed a demurrer setting up that the Superior Court was without jurisdiction to hear and decide the issue involved. An order was entered overruling the demurrer. The defendant's answer is a general denial. The defendant, while insisting upon the lack of jurisdiction of the court, proceeded to trial on the merits before a judge sitting without a jury. The judge found for the plaintiff in the sum of $820.13. The defendant appealed from the order overruling its demurrer and excepted to certain rulings and refusals to rule by the judge.

There was evidence that in September, 1938, the presiding judge of the Municipal Court for the South Boston district (who has since deceased and who, to avoid confusion, will be referred to hereinafter as Judge Logan) introduced the plaintiff to one Hurley, the chief probation officer of that court, and told him that he had appointed the plaintiff as clerk in his office. Judge Logan decided, however, to wait until 1939 to appoint the plaintiff since there was no appropriation for a clerk in the 1938 budget. On January 3, 1939, Judge Logan gave Hurley a letter addressed to the budget commissioner of Boston, one Lang, to be delivered by Hurley to him. The letter, so far as pertinent, reads as follows: "January 3, 1939 . . . Dear Sir: In accordance with the provisions of Chapter 276, Section 88, I have this day appointed Thomas A. Dolan, 1309 Commonwealth Avenue, Boston to the position of Probation Officer's Clerk in the Probation Department of the South Boston Municipal Court, salary $1000.–$1800. per annum." Hurley and the plaintiff went to Lang's office at city hall and delivered the letter to a clerk. Lang being then engaged, the clerk took the letter in to him, returned in a few minutes and said, "Mr. Lang will not approve it." On January 4, 1939, Lang wrote a letter to Judge Logan in which he refused to approve "such increase in the cost of the operation of . . . [his] court, having in mind the financial condition of the city." Following the incident of January 3, 1939, at Lang's office, the plaintiff went to the probation office at the South

Boston District Court on Friday and Saturday and on Monday evening of each week. Sometimes he went to the court on an additional day. Judge Logan had informed him that his pay would be $1,000 a year to start. A proposed budget was approved by Judge Logan in the fall of 1938 and contained an item for "probation clerk $1000. . . . as an addition to the regular service." The budget commissioner omitted this item from both the tentative and the final budget. In January, February, March and April, 1939, the clerk of the South Boston Court included the plaintiff's name on the payrolls which were approved by Judge Logan, but in each instance it was struck therefrom in the office of the city auditor. Finally, due to the desire of Judge Logan to straighten out the matter and to a circular letter from the office of the auditor, or budget commissioner, the plaintiff's name was omitted from the payroll for the month of May, 1939, and thereafter.

The plaintiff reported for work at the times fixed to which we have already referred. When he worked during the day his hours would be from 8:30 A.M. to 1:00 or 1:30 P.M. He performed services at these times but stopped going to the court late in April or in the early or middle part of May, 1939, of his own volition. In the month of June he returned and worked Monday nights and two days a week but in July, 1939, he finally stopped going to the probation office. He "got fed up spending carfare and working and not getting any money." He was at all times able and willing to perform services as clerk in the probation office. During the months of January to August, 1939, inclusive, the plaintiff was employed with some interruptions by the Works Progress Administration at a salary of $86 a month.

The judge made findings substantially as follows: The plaintiff was appointed as clerk in the probation office of the court involved on or about January 3, 1939, by virtue of G. L. (Ter. Ed.) c. 276, § 88, and his salary was fixed at $1,000 a year with an ultimate step-rate increase to $1,800. His position was a "part time one." Before and up to some time in September, 1939, he was employed

with some interruptions by the Works Progress Administration, receiving about $86 a month. He performed his duties as clerk in the probation office up to the middle of May, 1939, when he did not again report for duty except a few days in June of the same year. In January, February, March and April the payroll was made out by the clerk of the court involved, and approved by Judge Logan, the sum listed as due to the plaintiff in each of those months being $83.33. Upon calling at the city treasurer's office payment was refused, a line having been drawn through his name. He performed his work satisfactorily from January 3, 1939, to the middle of May in that year, and was at all times able and willing to continue his work. The judge further found that the plaintiff was an employee of the county of Suffolk up to the date of the writ (November 10, 1939) and as such entitled to the compensation fixed in the letter of Judge Logan. The judge denied thirteen of the defendant's fifteen requests for rulings, "not always because they are not abstractly correct but often because they are based on facts which I do not find. In so far as they are based on facts not appearing in the findings I do not find such facts to exist." The plaintiff filed twenty-three requests, of which sixteen were given, subject to the defendant's exceptions.

The defendant set forth as grounds for its demurrer that the declaration does not present a cause of action, and that the Superior Court was without jurisdiction to entertain the cause. The plaintiff alleges, in substance, that he is and has been a validly appointed employee of the defendant, under a contract entered into between the parties, and that the defendant has wrongfully refused to pay him the agreed salary for several months' services rendered by him under the terms of the contract. The defendant contends that inasmuch as G. L. (Ter. Ed.) c. 35, § 52, as amended by St. 1938, c. 73, § 1, provides an aggrieved party with an administrative remedy by an appeal to the mayor, such remedy must first be exhausted before resort may be had to the courts. The defendant further contends that failure of the administrative remedy is a condition precedent to an

action at law and consequently should have been alleged in the declaration.

We think that the defendant's position in this regard is not well taken.  G. L. (Ter. Ed.) c. 35, §§ 48–56, provides for a comprehensive system of classification of county "salaries, offices and positions." It provides for allocation, reclassification, and other necessary adjustments. The primary motive underlying the enactment of the governing statutes was to bring about uniformity and order among county positions and salaries. (See Report of the Special Commission on County Salaries, Sen. Doc. No. 270, 1930.) G. L. (Ter. Ed.) c. 35, § 52, provides, in part, that "Any incumbent aggrieved by the allocation or classification of his office or position may, in writing, appeal to the board" (in this instance to the mayor, under §§ 56 and 51).  St. 1938, c. 73, § 1, amended § 52 by inserting the words "or by any other action or by any failure to act." ·It seems clear from an examination of the declaration that the plaintiff has sufficiently alleged the facts of the validity of his appointment, and of his contract with the defendant.

As to this subject it remains to be considered whether the administrative appeal provisions of § 52 as amended apply to one in the position in which the plaintiff alleges himself to be.  The allegations of the declaration are that, in all respects, the plaintiff was validly upon the county payroll, and that the defendant's sole dereliction was its failure to pay over to him the salary rightfully due him in return for his services.  Thus questions of allocation and classification are not involved in the consideration of this demurrer.  The question in this respect therefore is whether a refusal to pay the plaintiff is "any other action or . . . any failure to act" within § 52 as amended, so as to require resort to administrative remedies before seeking redress at law.  We are of opinion that a mere refusal to pay a salary to one on the county payroll is not, without more, a "failure to act" within the meaning of § 52 as amended.  Examination of §§ 48–56 shows that the functions and duties of the officers and agencies in charge of the county classification plan consist in investigating, recommending, allocating,

classifying, re-classifying and the like. Nowhere in the governing statutes is there any suggestion that these officers and agencies are charged with the duty of paying employees once classification is complete. The "failure to act" referred to in § 52 as amended must pertain to a failure to perform duties imposed by §§ 48–56, and payment is not one of these. It is thus manifest that the plaintiff, if he was, as he alleges, validly appointed, could resort to his common law right of an action on the contract since no administrative remedy was available to him. It follows that the demurrer was properly overruled.

The question remains whether the plaintiff is entitled to prevail on the merits of the case. The defendant's first request, which was denied, follows: "1. The plaintiff cannot recover in this action." This was a request for a ruling on all the evidence and not for a finding. Among the requests of the plaintiff which were granted subject to the defendant's exceptions were the following: "10. No statutory power of supervision of expenditure of public funds can legally interfere with the management and operation of any court. 11. The action of the defendant in refusing to pay the plaintiff his salary was without justification in law. *Avery* v. *Norfolk County*, 279 Mass. 598."

If both prior allocation of the plaintiff's position as a part time worker and the fixing of his compensation therefor were conditions precedent to a valid claim for salary by him, then his action must fail, since it appears from the record that no allocation of such a position has been made nor compensation fixed therefor.

Under G. L. c. 276, § 88, courts empowered to employ clerical assistance for probation officers were authorized to fix the compensation of such employees, but St. 1931, c. 301, § 49, amended § 88 so as to omit the power to fix their compensation. Since this function is no longer within the province of the court which appoints the clerks, and since the salaries of such persons are wholly payable from the county treasury, the matter must be governed by the provisions of the county classification plan embodied in G. L. (Ter. Ed.) c. 35, §§ 49–56 as amended. Under the terms of

these sections the proper county authorities are required to classify the various county positions, to fix or approve salaries therefor in cases where other provisions for fixing salaries are not provided by statute, and to allocate to their proper places in the system newly created positions. The judge has found that the plaintiff's "position was a part time one." As such, it cannot be said to have come within the existing classification of "Clerk," as set forth in City of Boston Document 55 (1931) pages 11–12, which was introduced in evidence. There has been no allocation of the plaintiff's position as a part time worker and no salary has been fixed for it by those chargeable with the duty of establishing compensation under the classification plan. Under its provisions it is manifest that the minimum salary of $1,000 and the maximum salary of $1,800 for clerks were fixed for full time service. We are of opinion that prior allocation of the plaintiff's position as a part time worker and approval of the amount of his compensation were strict conditions precedent to the county's liability. Such requirements are designed to prevent loose and promiscuous expenditures of public funds, and must be regarded as mandatory. See *Flood* v. *Hodges*, 231 Mass. 252, 256; *McCarthy* v. *Malden*, 303 Mass. 563, 565.

The denial of the defendant's first request and the granting of the plaintiff's eleventh request before set forth, were prejudicial error. The granting of the plaintiff's tenth request was also erroneous. The legislative branch may exercise wide regulation, supervision, and control over courts not established by the Constitution, especially with regard to fiscal matters. *Opinion of the Justices*, 271 Mass. 575, 579.

> *Order overruling demurrer affirmed.*
> *Exceptions sustained.*
> *Judgment for the defendant.*